IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Timothy Lewis Evans, ) | |
| ) | Civil Action No. 3:10-cv-2569-JMC |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Warden BRCI, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report"), (ECF No. 30), filed November 4, 2011, recommending that Respondent Warden BRCI's ("Respondent") Motion for Summary Judgment (ECF No. 19) be granted and that Petitioner Timothy Lewis Evans's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition") (ECF No. 1) pursuant to 28 U.S.C. § 2254 be denied. This review considers Petitioner's *pro se* Objections to the Report ("Objections"), (ECF No. 35), filed December 1, 2011.[1] For the reasons set forth herein, the court **ACCEPTS** the Magistrate Judge's Report and **DISMISSES** Petitioner's Petition with prejudice.

FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2003, the York County Multijurisdictional Drug Enforcement Unit conducted a search of Petitioner's home pursuant to a search warrant. (ECF No. 39 at 38, 81). At the time of the search, Evans was present along with his mother, other family members (including

---

[1] On November 28, 2011, having received no objections from Petitioner, the court issued an order adopting the Report and dismissing this action without prejudice. (ECF Nos. 32, 33). Petitioner subsequently filed his Objections on December 1, 2011. On December 12, 2011, Petitioner moved for reconsideration of the court's order explaining that he had attempted in good faith to submit his Objections within the allotted time. (ECF No. 36). The court issued a text order on December 12, 2011, stating that it would consider Petitioner's Objections.

1

children), his hairstylist Chaquita Culp, and friend Donnell Mayfield. *Id.* at 96; (ECF No. 20-3 at 94; ECF No. 20-4 at 9, 11). The officers seized crack cocaine that was located in a laundry basket. (ECF No. 20-3 at 5). They also retrieved crack cocaine that was located next to Petitioner's foot, and marijuana that was on Petitioner's person. *Id.* at 44. An officer asked who the crack cocaine belonged to and commented that multiple people in the house could be found to have shared responsibility for the drugs and could therefore be charged. *Id.* at 34-35. At that time, Petitioner told the police officers that the drugs belonged to him. *Id.* at 35.

Petitioner was indicted for charges related to the possession of crack cocaine and marijuana. (ECF No. 39 at 10). He was released on bond prior to his trial date. *See id.* at 16. Beginning in February 2004, Petitioner's counsel had trouble contacting him. *Id.* at 12. Petitioner's counsel sent letters notifying Petitioner of his February and March court dates, and yet Petitioner failed to appear. *Id.* at 10, 12. On the week of Petitioner's trial, his trial counsel sent an investigator to find him. *Id.* at 12. While the investigator was able to speak with some of Petitioner's family and friends, no one knew where Petitioner was located. *Id.* On the first day of his trial, March 3, 2004, Petitioner was absent, and he remained absent throughout the two-day duration of the trial. *See id.* at 12-17.

The trial judge conducted an inquiry regarding Petitioner's absence. *Id.* During that inquiry, the state entered into evidence Petitioner's bond, *id.* at 16, and argued, "The bond does indicate and Mr. Evans initialed the portion of the bond where it does say that, it gives him a first initial date to appear and that he shall appear for each successive court term thereafter." *Id.* at 17. When the trial court invited defense counsel to make a showing on the issue of Petitioner's absence, defense counsel declined. *Id.* The trial court determined that Petitioner had waived his right to be present for his trial. *Id.* at 18. The trial judge found that Petitioner "received notice of

his right to be present" and had "been warned that the trial would proceed in his absence should he fail to attend". *Id.* The trial court noted that two letters had been sent by the public defender to Petitioner's listed address regarding his court dates. *Id.* The trial judge concluded that Petitioner's bond showed he understood his rights and obligations regarding his attendance in court. *Id.*

At the beginning of Petitioner's trial, defense counsel stated that he had recently spoken with the state about its discovery obligations and wanted to ask on the record if the state possessed any other material that was "either exculpatory or inculpatory" and that was not previously provided. *Id.* at 34. The state replied that there was not. *Id.*

The court then held a suppression hearing in which Petitioner's trial counsel challenged the validity of the search warrant for the search of Petitioner's person and his home. *Id.* at 37-46. During the hearing Officer Robert Cashier testified that he prepared and presented a search warrant affidavit based on information he received from a confidential informant indicating Petitioner was keeping and selling crack cocaine at his residence. *Id.* at 38-40. The officer stated that the confidential informant participated in a controlled purchase of the drugs from Petitioner in which he used governmental funds and was monitored by an electronic listening device. *Id.* at 40. The officer further testified that police officers recovered the drugs from the confidential informant following the transaction. *Id.* The judge who issued the warrant handwrote on the affidavit that the informant had been previously used. *Id.* at 41.

Petitioner's trial counsel argued that the search warrant was invalid because the affidavit did not contain sufficient information to show that the confidential informant was reliable. *Id.* at 40. Defense counsel contended that the fact that the confidential informant had been used before was not enough to make the search warrant reliable, particularly without oral testimony to

3

supplement the claim and without evidence that the use of the confidential informant "had resulted in any arrests, any other search warrants, or any positive evidence [being] gathered." *Id.* at 44. Petitioner's trial counsel also argued that the search warrant affidavit was non-specific in that it did not state where the controlled purchase was made, from whom it was made, nor what was heard via the electronic recording. *Id.* at 44-45. The defense attorney also argued that the only specific reference as to a location or any particular individuals was that the informant confirmed the street on which the transaction took place. *Id.* at 45. Petitioner's trial counsel argued that the magistrate's determination of probable cause must be based on a valid affidavit, which could not have been the case because Petitioner's affidavit lacked any indication of the informant's reliability. *Id.* at 45-46.

Upon the conclusion of the defense's argument, the trial judge immediately denied the defense's motion finding no need to hear from the state. *Id.* at 46. The court stated that based on the totality of the circumstances, it found "the affidavit does provide the magistrate with sufficient information concerning the informant's reliability upon which the magistrate could base a probable cause determination." *Id.* at 46-47.

During the trial, Officer Terrill Harris testified that as another officer was attempting to handcuff Petitioner who was standing, Officer Harris observed a bag of crack cocaine next to Petitioner's left foot. (ECF No. 20-3 at 2-3). Officer Harris indicated that he reviewed the case summary for Petitioner's case before coming to trial and stated that he had communicated with the officer who prepared the report prior to it being generated. *Id.* at 16.

Following the state's case, Petitioner's trial counsel moved for a directed verdict making a short, three-sentence, non-specific motion. (ECF No. 20-4 at 33). The trial judge denied the motion. *Id.* Petitioner's counsel also moved to suppress the crack cocaine in response to the

testimony of Officer Harris. *Id.* at 33-38. The officer had provided in a discovery report that he observed Petitioner throw a bag of crack cocaine yet at trial the officer testified that he simply saw the crack cocaine on the floor near Petitioner's foot. *Id.* at 34-35; (*See* ECF No. 20-3 at 2-16). Petitioner's counsel argued that his client was prejudiced by this change in the officer's account because Petitioner had relied upon the officer's original account to prepare for the case and to advise Petitioner. (ECF No. 20-4 at 33-36, 39-40). The state's attorney conceded that she did not provide the new information to defense counsel regarding the officer's testimony despite being made aware of the change two days prior to trial. *Id.* at 38. The state argued that Petitioner was not prejudiced by this mistake because it resulted in the state having less evidence than what was originally the case. *Id.* at 38-39. The trial judge refrained from ruling on the directed verdict motion which Petitioner's counsel raised in response to this issue and chose instead to make counsels' remarks a part of the record and to address the issue at a later time if necessary. *Id.* at 40.

Following the case by the defense and the closing arguments of both parties, the jury deliberated for a little over two hours before finding Petitioner guilty of his charges related to the possession of crack cocaine. (ECF No. 20-1 at 19-20). Defense counsel renewed the motion regarding the alleged insufficiency of the evidence and included within his argument his objection to the state's failure to provide a correct account of Officer Harris's observations during the search of Petitioner's home. *Id.* at 20-21. The trial court denied Petitioner's motions. *Id.* at 21. Petitioner was sentenced to imprisonment for a term of 25 years in addition to the requirement that he pay certain fines. *Id.* at 25-26. On March 24, 2004, Petitioner appeared before a judge on a probation matter and for a reconsideration of his sentence. *Id.* at 25-31. At that hearing, Petitioner indicated that he failed to attend his trial because he was scared. *Id.* at

5

29-30.

On November 23, 2004, Petitioner filed an application for post-conviction relief ("PCR") in state court in which he raised claims of ineffective assistance and a due process violation. *Id.* at 33-38. A PCR hearing was held on October 21, 2008, in which Petitioner was represented by counsel who requested a belated appeal for his direct appeal claims and raised the post-conviction issues of ineffective assistance of trial counsel and a denial of due process under the Sixth and Fourteenth Amendments. *Id.* at 44-74. On November 19, 2008, the PCR judge denied Petitioner's PCR claims finding that Petitioner failed to show ineffective assistance of trial counsel. *Id.* at 77-80. While the PCR judge noted that he was not specifically addressing Petitioner's due process claim in his order, the PCR judge stated that he found Petitioner failed to present any probative evidence for the alleged violation. *Id.* at 81. The PCR court granted Petitioner's request for a belated appeal. *Id.* at 80.

On July 9, 2009, Petitioner's counsel filed a petition for a writ of certiorari to the South Carolina Supreme Court raising the issue of whether the PCR court correctly granted the belated appeal. (ECF No. 20-8). In an accompanying brief, Petitioner's counsel presented two issues:

1. Did the trial court err by denying appellant's motion to suppress the crack because the officer's testimony was different from the police report which fact was not disclosed to appellant prior to trial and the solicitor admitted that she knew this before trial?
2. Did the trial court err in denying appellant's motion to suppress the search warrant based on the insufficiency of the affidavit because no evidence was presented regarding the reliability of the confidential informant?

(ECF No. 20-9 at 4). For both issues, the South Carolina Supreme Court affirmed the lower courts and upheld Petitioner's conviction. (ECF No. 20-11).

On October 4, 2010, Petitioner filed the instant habeas motion stating four grounds for relief. (ECF No. 1). The court has construed Petitioner's claims as follows. For his first ground,

Petitioner contends that the trial court erred in not directing a verdict and/or that his trial counsel and appellate counsel were ineffective for not preserving his directed verdict claim. (*See* ECF No. 1 at 5; ECF No. 35 at 4). As a second and third ground, Petitioner argues that the trial court erred in not suppressing the crack cocaine and the search warrant. (ECF No. 1 at 6-9). For a final ground, Petitioner claims the trial court violated the Sixth Amendment by trying him in his absence and/or that his trial counsel and appellate counsel were ineffective for not preserving this issue. (*See id.* at 9-10; ECF No. 35 at 4).

## STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber*, 423 U.S. 261, 270-71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S.C. § 636 (b)(1).

## ANALYSIS

As Petitioner is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999). Given the several objections Petitioner has filed in response to the Report, (ECF No. 35), the court is inclined to review *de novo* all of the Magistrate Judge's findings.

**Grounds One and Four: Denial of a Directed Verdict and Trial in Petitioner's Absence**

Ground one of Petitioner's petition involves the trial court's denial of a directed verdict, and ground four involves Petitioner's trial *in abstentia*. The Magistrate Judge correctly determined that, to the extent Petitioner argues error on the part of the trial judge, both claims are procedurally barred as the arguments were not presented on appeal to the state courts. (*See* ECF No. 20-9); *Strickler v. Pruett,* 149 F.3d 1170, at *5 (4th Cir. 1998) ("[A] state prisoner must exhaust all available state remedies[,] before he can apply for federal habeas relief[,]" by "fairly present[ing] the substance of his claim to the state's highest court."). Petitioner acknowledges that he failed to exhaust these grounds, but contends that his failure to preserve these issues was due to the ineffective assistance of his trial and appellate counsel. (ECF No. 1 at 5, 10; ECF No. 35 at 4).

Petitioner's claims of ineffective assistance of trial counsel for failure to sufficiently move for a directed verdict and failure to object to a trial in his absence, although themselves unexhausted, may be addressed pursuant to *Martinez v. Ryan,* 132 S. Ct. 1309 (2012). *Martinez* holds that federal courts may find cause to excuse a procedural default where a prisoner had inadequate assistance in his initial-review collateral proceedings and the defaulted claim at issue is one of ineffective assistance at trial. *Id.* at 1320. However, "to overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim…has some merit." *Id.* at 1318.

The court finds that Petitioner's claim of ineffective assistance of trial counsel is without merit because Petitioner has not made a sufficient showing of prejudice. The United States Supreme Court has explained, "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that

the [proceeding] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In addition to showing his counsel's representation "fell below an objective standard of reasonableness", a defendant must also show "that the deficient performance prejudiced the defense." *Id.* at 687-88. In other words, he must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The government's brief supports Petitioner's claim that his trial counsel was ineffective by explaining that Petitioner's trial counsel failed to present an argument to the trial court that would have sufficiently preserved the directed verdict issue for direct appeal. (ECF No. 20 at 11-12). Nonetheless, at the conclusion of the trial, Petitioner's trial counsel renewed the motion with detail (ECF No. 20-1 at 20-21). Petitioner has not presented any reason for the court to find it probable that the trial judge would have directed a verdict if confronted with a different argument from trial counsel. Similarly, Petitioner has failed to demonstrate that the proceeding would have achieved a different result if he were present or if his trial counsel had objected to his being absent.

Therefore, the court accepts the recommendation of the Magistrate Judge and dismisses grounds one and four of Petitioner's petition.

**Grounds Two and Three: Denial of Motions to Suppress Crack Cocaine and Search Warrant**

Petitioner argues that the trial court erred in refusing to suppress the crack cocaine and the search warrant. Petitioner's claims were preserved for habeas review as they were exhausted in state court. (*See* ECF No. 20-9); *Strickler,* 149 F.3d 1170, at *5. Federal habeas review is conducted pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

In order to grant relief under the AEDPA, a federal court must find that the underlying state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2). The court must also assume that the factual determinations made by the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Magistrate Judge applied the proper framework for Fourth Amendment claims presented in 28 U.S.C. § 2254 petitions. Under *Stone v. Powell,* 428 U.S. 465 (1976), a federal court may not grant habeas relief for an alleged Fourth Amendment violation, "where the State has provided an opportunity for full and fair litigation of [the] claim." *Id.* at 494. The Fourth Circuit has adopted an interpretation of "an opportunity for full and fair litigation" which requires that the district court "inquire as to whether or not the petitioner was afforded an [o]pportunity to raise his Fourth Amendment claims under the then existing state practice." *Doleman v. Muncy,* 579 F.2d 1258, 1265 (4th Cir. 1978). In the absence of a Petitioner's claim "that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired," a district court's analysis should stop there. *Id.*

The Report concluded that Petitioner's Fourth Amendment claims were barred from federal habeas review because Petitioner had the opportunity to fully and fairly litigate the issues in state court. (ECF No. 30 at 12-13). The court agrees.

Petitioner's trial counsel moved for the suppression of the crack cocaine at the conclusion of the state's case in response to Officer Harris's modified account of the search of Petitioner's home. (ECF No. 20-4 at 33-38). The trial judge heard arguments from both sides and reserved

judgment on the issue until later in the trial. *Id.* Defense counsel re-raised the issue of Officer Harris's changed account at the conclusion of the trial in a motion for a directed verdict. (ECF No. 20-1 at 20-21). The trial judge denied the motion. *Id.* at 21. Petitioner's trial counsel challenged the validity of the search warrant in a suppression hearing before the trial judge. (ECF No. 39 at 37-46). At that hearing, the trial court heard testimony from the officer who prepared and presented the search warrant affidavit to the magistrate. *Id.* The trial judge denied Petitioner's motion to suppress the warrant. *Id.* at 46.

Petitioner's appellate counsel presented both suppression issues to the South Carolina Supreme Court in a belated appeal. (ECF No. 20-9 at 4). The Supreme Court issued a per curiam decision upholding Petitioner's conviction. (ECF No. 20-11). Because Petitioner was provided with an opportunity to litigate these Fourth Amendment claims in state court, grounds two and three of Petitioner's petition are barred from habeas review.

## CONCLUSION

Based on the aforementioned reasons and a thorough review of the Report and Recommendation and the record in this case, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 30). It is therefore **ORDERED** that the Petitioner's Petition (ECF No. 1) in the above-captioned case is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

Greenville, South Carolina
October 17, 2013